UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROBERT C. SCHRADER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 2:19-CV-303-PPS |
| ) | |
| ANDREW M. SAUL, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

Robert Schrader appeals the Social Security Administration's decision to deny him benefits for a disability that he alleges began on May 19, 2011. Following a hearing and subsequent decision by an Administrative Law Judge (ALJ) on November 25, 2016 that Schrader was not disabled, he requested Appeals Counsel review. On March 1, 2018, the Appeals Council remanded the case for a second hearing which was held on August 28, 2018. Another ALJ once again found that Schrader was not disabled within the meaning of the Social Security Act and that he had the residual functional capacity (RFC) to perform light work with some restrictions. Schrader suffers from several medical issues including chronic obstructive pulmonary disorder (COPD), emphysema, and neuropathy. [Tr. 18.][1]

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 9.

Schrader challenges the ALJ's decision on several grounds but I will focus my attention on how the ALJ assessed the opinions of Schrader's treating physician. Because I find the ALJ's analysis of the medical opinion evidence is flawed, I will **REVERSE** the ALJ's decision and **REMAND** on this issue.

## Discussion

Let's start by sketching out the legal framework governing this case. My role is not to determine from scratch whether or not Schrader is disabled. Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). My review of the ALJ's decision is deferential. This is because the "substantial evidence" standard is not particularly demanding. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Of course, there has to be more than a "scintilla" of evidence. *Id.* This means that I cannot "simply rubberstamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

The ALJ found that Schrader had the severe impairments of chronic obstructive pulmonary disorder (COPD), emphysema, and neuropathy. He determined that Schrader had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) as the claimant was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently and sit, stand and/or walk for six hours in an eight hour workday, except: the claimant was unable to climb ladders, ropes or scaffolds or operate foot lower controls with the bilateral lower extremities, could occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl and needed to avoid occasional exposure to pulmonary irritants such as dust, fumes and gasses and all exposure to extreme temperatures.

[Tr. 18.]

In analyzing whether this RFC is proper, my focus will be on the ALJ's handling of the examining source opinion of Dr. Eric Leestma, Schrader's treating physician. Schrader had a long term doctor-patient relationship with Leestma. He first began seeing his him on August 1, 2002, and Dr. Leestma treated Schrader for more than a decade thereafter. [Tr. 371-77, 379-81, 384, 423.] On February 15, 2011, Dr. Leestma completed a Multiple Impairment Questionnaire. Dr. Leestma diagnosed Schrader with end-stage COPD, emphysema, and asthmatic bronchitis. [Tr. 423.] Dr. Leestma also opined that Schrader was able to lift and/or carry up to 20 pounds occasionally, sit, stand and/or walk for one hour each in an eight hour workday, that he must get up and move around hourly for 15-20 minutes before sitting, that he is unable to continuously stand or walk in a worksetting, that he is unable to grasp or turn objects, perform fine manipulations or reach bilaterally and that he would need to avoid fumes,

3

gasses, extreme temperatures, humidity, dust, heights, kneeling, bending, stooping and pushing/pulling. [Tr. 21, 423-430.]

A radiology report from May 21, 2012 stated that there is flattening of Schrader's diaphragm associated with mild COPD and that there is a nodule in the right upper lung. [Tr. 478.] A CT scan conducted on June 11, 2012 confirmed the existence of the nodule and noted that there was calcified atherosclerosis of some of Schrader's coronary arteries. [Tr. 476.]

In September 2012, Schrader went to Leestma Medical Clinic for pain in his hands and feet. [Tr. 20.] In September he underwent a nerve conduction study at Jasper County Hospital that revealed mild to moderate neuropathy, tarsal tunnel syndrome, and lumbosacral radiculopathy in his spine. [Tr. 370.] Records from an October 17, 2013 visit to Jasper County Hospital note that Schrader needs a nebulizer at home for pneumonia and COPD. [Tr. 444.]

On October 1, 2014, Colette Walter, Schrader's treating nurse practitioner, completed a Peripheral Neuropathy Residual Functional Capacity Questionnaire. [Tr. 601.] She had been seeing Schrader every 3 months for 2 years at this point. [Tr. 598.] She opined that Schrader is able to lift 10 pounds rarely, that he is able to sit, stand and/or walk for less than two hours in an eight hour workday, can walk less than one block at a time, needs to take a 10 minute break every 15 minutes, that he needs to elevate his feet 45 degrees for 75% of the workday, that he is unable to stoop, can occasionally twist and that he has significant limitations in ability to reach, handle, and

4

use his fingers. [Tr. 22, 598-601.]

Starting on November 20, 2014, and through October 4, 2016, Schrader received medical care at Franciscan Health Rensselaer. [Tr. 626-27, 737, 640, 647, 650, 718.] Physicians there diagnosed him with emphysema, COPD, and neuropathy. [Tr. 626-27, 640.]

On April 23, 2018, consultative examiner Dr. Jerald Smejkal completed a Medical Source Statement of Ability to do Work-Related Activities (Physical).  Dr. Smejkal opined that Schrader was able to stand or walk for two hours in an eight hour workday, that he experiences numbness and tingling in his feet and legs, and that he cannot climb a few steps at a reasonable pace with the use of a hand rail or walk a block at a reasonable pace on rough or uneven surfaces, citing shortness of breath as a factor.  The statement also describes Schrader's ability to occasionally (about one third of the time) lift anywhere from 11 to 20 pounds and 21 to 50 pounds.  [Tr. 681-86.]  Dr. Smejkal also noted in the Consultative Examination Report that Schrader had full grip and dexterity, and had full range of motion in his upper and lower extremities.  [Tr. 673.]

A series of reports by Dr. Michelle Keller from the Franciscan Physician Network DeMotte Health Center discuss Schrader's peripheral neuropathy and chronic wheezing, coughing and shortness of breath.  The lung symptoms are aggravated by activity, smoke, weather changes and "occupational exposure."  [Tr. 731-37.]

The major dispute for the purpose of this opinion is Dr. Leestma's Multiple Impairment Questionnaire.  The ALJ made the following comments about Dr. Leestma's

5

questionnaire:

> The undersigned gives these opinions little weight, as they are inconsistent with the record. The record indicates that the claimant had full strength and sensation of his upper extremities, with full grip and dexterity. This is inconsistent with such extreme limitations in his ability to reach, grip and perform fine manipulation. In addition, imaging studies of his chest indicate that the claimant's emphysema remained mild and stable. Notes from physical examinations were unremarkable, as his lungs were clear to auscultation with normal breath sounds and that he was able to walk unassisted with a normal gait. The objective evidence is more consistent with a finding that the claimant was able to perform work at the light exertional level and is inconsistent with Dr. Leestma's assessment which suggests that the claimant is practically bedridden with sitting, standing and/or walking for only one hour in an eight hour workday.

[Tr. 21-22.]

I share some of the ALJ's misgivings of Dr. Leestma's opinion given that its recommendations are significantly restrictive and because the questionnaire is from 2011. Certainly Schrader's medical condition has changed over the years, but Schrader alleges a disability beginning in 2011, and the ALJ did not fault the opinion for being too dated. But the problem, as I see it, is that the ALJ did not satisfactorily explain *why* he discounted Dr. Leestma's opinion by specifically citing evidence to the contrary in the record. As a result, the ALJ did not create a logical bridge between the evidence and his conclusions. Rather, the ALJ generally summarized evidence in the record that he presumably thought contradicted Dr. Leestma's opinion, but did not provide enough evidence for me to meaningfully review his conclusions. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (ALJ must provide sufficient detail in analysis to allow a court to trace the path of their reasoning); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001)

(ALJ must explain how unfavorable evidence is more probative than favorable evidence). For example, even if Schrader did have full strength and sensation of his upper extremities, and full grip and dexterity, the ALJ does not show how this supports his conclusion that Schrader could work full time considering all of his other limitations.

Both the regulations and good sense require ALJs to give more weight to opinions from medical sources who have examined and have a treating relationship with the claimant. *See* 20 C.F.R. § 404.1527(c)(1) and (2). A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2); s*ee also Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). An ALJ is free to discount the treating physician's opinion, but he must provide "good reasons" to explain the weight given to the opinion and support these reasons with evidence. SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

The ALJ states that Dr. Leestma's claims are "inconsistent with the evidence," and makes numerous references to "the record," to which I ask, *where* in the record? The ALJ has provided me no direct citations to support these statements. The ALJ also states earlier in his opinion that he finds Schrader's COPD, emphysema and neuropathy are "severe," but then later claims, without citation when discussing Dr. Leestma's opinion, that Schrader's emphysema is "mild and stable." [Tr. 18, 21-22.] While the ALJ

7

states that notes from one physical examination shows Schrader's lungs were "clear," he fails to address Dr. Leestma's other finding that Schrader was wheezing due to his COPD and that he had "asthmatic bronchitis despite aggressive treatment." [Tr. 21-22, 423.]

There is evidence in the record that could provide a reasonable basis for Dr. Leestma's conclusions and show that his opinion was supported. Dr. Leestma completed his questionnaire on February 15, 2011. Progress notes from Leestma Medical Clinic on August 30, 2011 note worsening shortness of breath, sleeping a lot and stiffness in the chest and back area. [Tr. 378.] A note from visits dated November 17, 2011 and December 5, 2011 discuss rib pain from previous fractures Schrader experienced. [Tr. 375, 377.] In his questionnaire, Dr. Leestma cites "previous CT scan results and pulmonary function test results" as supporting evidence for his opinion, as well as the "degenerative changes" caused by multiple rib fractures. [Tr. 424-25.] The medical records cited here occurred after Dr. Leestma's assessment, but are from the same year and certainly provide context for the picture of Schrader's health at the time.

What's more, a consultation with Dr. Shahid Ahsan of the Jasper County Hospital on April 24, 2014 reported severe COPD and emphysema, and that Schrader experiences significant labored breathing after walking half a block. Schrader also reported excessive daytime sleepiness and symptoms of fatigue. [Tr. 457-58.] Additional notes from around the time of that consultation indicated that the COPD and emphysema were "worsening." [Tr. 461.] A report dated June 28, 2014 revealed a

"severe airflow obstruction" that was significantly improved with treatment. [Tr. 587.] While this information also came some time after Dr. Leestma's questionnaire, this additional information can show that the symptoms Dr. Leestma cited in his assessment persisted, at least in part, until 2014. Dr. Smejkal, the consultative examiner, also opined that Schrader could not tolerate exposure to fumes, odors, dusts, gasses, or temperature extremes, which echoes Dr. Leestma's findings. [Tr. 429, 668.]

During the first ALJ hearing on November 9, 2016, Schrader testified that he originally ceased working at Dover Chemical in 2008 because he was unable to pass the pulmonary function test component of the company's physical. [Tr. 42-44.] He also testified that he could not walk for more than a block due to shortness of breath, that he could not sit for more than an hour due to stiffness, and could not stand for more than 30 minutes due to the neuropathy in his feet, even while taking medication for nerve pain. [Tr. 44, 46-47.]

During the second hearing in front of this ALJ on August 28, 2018, Schrader elaborated on his earlier testimony. He testified that after he failed the pulmonary function test in 2008, he was allowed to retry the test and failed a second time. [Tr. 92.] Schrader also mentioned that he can only stand for approximately 15 minutes and becomes out of breath after walking 25 feet. [Tr. 87-88.] I do not intend to weigh the entire body of medical evidence myself, but I do find that the record is not so one-sided against Dr. Leestma that it should be automatically disregarded without more meaningful review or explanation by the ALJ.

Aside from the "good reasons" requirement, in addition, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations *require* the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009) (emphasis added) (citation omitted); *Mueller v. Astrue*, 493 F. App'x 772, 776-77 (7th Cir. 2012) (remanding ALJ decision that did not consider the checklist of factors); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) ("Here, the ALJ's decision indicates that she considered opinion evidence in accordance with §§ 404.1527 and 416.927. However, the decision does not explicitly address the checklist of factors as applied to the medical opinion evidence."). "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' [his] reasons." *Elder v. Astrue,* 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue,* 516 F.3d 539, 545 (7th Cir. 2008)).

The ALJ did not mention any of the aforementioned factors in his assessment. An ALJ is not necessarily required to explicitly discuss in rote fashion each factor in their opinion, as long as his decision makes clear those factors were considered. *Schreiber v. Colvin,* 519 F. App'x 951, 959 (7th Cir. 2013).  But here, it is unclear whether the ALJ weighed any of the factors such as the length, nature and extent of the treating relationship between Dr. Leestma and Schrader, or the types of tests performed.  On the Multiple Impairment Questionnaire Dr. Leestma mentioned seeing Schrader twice a

year, and cites CT scan results and pulmonary function tests as sources for his opinion. [Tr. 423-24.] The ALJ does not reference either of these factors when discussing the objective evidence. Dr. Leestma also reported that he had been treating Schrader for approximately nine years prior to filling out the questionnaire, since August 1, 2002. [Tr. 423.] The ALJ ignored this lengthy treating history; explicit discussion is not required, but it remains unclear whether the extent of the relationship was meaningfully considered. Looking to the consistency and supportability of the opinion, there are certainly points of evidence throughout Schrader's medical history that would support some of the conclusions on the questionnaire, as stated previously. Although I'm not going to analyze the ALJ's treatment of the opinions of the treating nurse practitioner Ms. Walter (which is another argument Schrader contends requires remand), I will note that many of her limitations are consistent with Dr. Leestma's.

On remand, the ALJ should reevaluate the opinion of treating physician Dr. Leestma. If the ALJ again determines that his opinion is not entitled to controlling weight, the ALJ should make sure to reinforce that conclusion with specific citations to the record. Additionally, if the ALJ again finds Dr. Leestma's opinion is not entitled to controlling weight, the ALJ should make sure to address the various factors set forth in 20 C.F.R. 416.927 in assessing the weight to afford Dr. Leestma's opinion.

\* \* \*

Because I am remanding this case for the reasons stated above, I need not discuss the remaining issues raised by Schrader. He can raise those issues directly with the ALJ

11

on remand.

## Conclusion

For the reasons set forth above, the Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: August 19, 2020.

                                            /s/ Philip P. Simon
                                            PHILIP P. SIMON, JUDGE
                                            UNITED STATES DISTRICT COURT